24-1598 County of Ulster v. Alliance of Nonprofits for Insurance Risk Retention Group 24-1589 County of Ulster v. Alliance of Nonprofits for Insurance Risk Retention Group We have this sort of piece of paper that reflects the outcome of the arbitration. It wasn't clear to me what the questions presented were, how the issues were framed in the arbitration. Was the question of the respective parties, now I'm talking about JFS and the county, their status as master or principal for the agent, was that one of the issues that was litigated? Yeah, and I would direct you to 1002, probably to 1013 of the record. It's a supplemental briefing with regard to the motion for summary judgment. That's where they bring in the arbitration award and talk about it and what it means. And it breaks down that the issue being, at least one of the issues being discussed is, what was the status of Ms. Hyde vis-à-vis JFS and the county? And then that arbitration award comes out 100% versus the county. And is that preclusive as to the insurer here? Oh, yeah, absolutely. They are lockstep. The insurer, NIMR, has no rights outside of the rights of its own insurer. Here they're seeking to subrogate, so they have no greater rights than that of the county. Well, they have a policy that if we reject your argument that you just made about subsection C only sweeping in the things above, if JFS's policy essentially defines her as an insured of the ‑‑ oh, but you're saying that relies on the assumption that she is, in fact, a volunteer of JFS, and that conclusion is, in your view, inconsistent with the arbitration award. Is that correct? That's correct, Your Honor. So there's no way that the county becomes an insured. And importantly, I don't think the judgment does a good job in separating the two insureds and treating them as two different insureds, and I think that's important that it be done that way, because large part, Barbara Hyde, she's been dismissed. She has no liability beyond the $300,000 that the GEICO policy paid. So we have a judgment here that says that alliance owes in excess of GEICO for Hyde. Well, no, I think the argument, at least, and, again, this depends on rejecting your argument as to the impact of subsection C, is that we're now not talking about coverage for Hyde's conduct directly. We're talking about coverage for the county's liability based on its derivative liability for Hyde, which isn't in any way cut off by that stipulation, right? The whole point of that stipulation was to get Hyde out of it so that they could fight about who else. And that's great. And I have no problem if we're saying Hyde's out. Hyde, the coverage for Hyde, it's not a case in controversy anymore. She can't, we can't pay. The judgment's just incorrect, in my view, of saying we owe Hyde coverage in excess of GEICO. So now I'm just talking about the county. So as to the county, I've already said why they don't apply, all right? And so even then we're going to apply the social services endorsement, right? If we want to apply social services endorsement, I would say that Hyde is not insured, okay? That endorsement is triggered when Hyde is not triggered because Hyde did not volunteer services to JFS. We know from the facts here that all the contact was with Patrick McDonough of the county. Well, doesn't the agreement between the county and JFS essentially create a collaborative, I think it actually uses the term collaboration, a joint venture of sorts? It just seems to me that the notion that she's either a volunteer for the county or she's a volunteer for Hyde is inconsistent with the structure that they've set up in which the volunteers are volunteers for both of them as joint collaborators. Well, what they did is they actually set up a very comprehensive contract that was abandoned entirely because the testimony, and I don't need to repeat it, you guys know the record much better than me, and you have clerks that know it a ton of times better than I will. You're supposed to know it better than they do. I'm sorry, Your Honor? I just said you're supposed to know it better than they do. Yeah, we certainly hope you know it better than they do. I've been here. Thanks for the flattery. In any event. Counsel, you say now much of your brief is devoted to the fact that the agreement was abandoned. Yes. And you barely mentioned it so far. Is there? I was just about to get into that, Your Honor. So there was a contract. It was renewed twice. The relevant contract was the renewed contract, which went into effect January 1 of 2018. The accident happened seven days later, January 8. What was done in that seven days to abandon the contract that had just been renewed? Well, looking at the whole – No, no. I mean it's a new contract. It was renewed. It existed for seven days. What was done to abandon the contract? I see your point, and respectfully I would refer to the testimony of McDonough. No, no. We're familiar with the records. What was done in that seven days to abandon the contract? What was done is that that whole scope of work in that contract was not being followed at that time. At that time, because who directed Barbara Hyde? Patrick McDonough did. Hold on. Hold on. The structure of the contract was set up in which it was agreed that JFS had to have insurance and the drivers had to have insurance, and all of that was done, and JFS would be paid. So if the argument of abandonment has any merit, there would have had to have been something that was done in that seven days that clearly reflected that the parties were no longer going to follow the contract. And I would say that it was the direction of the control that Patrick McDonough had over Barbara Hyde in scheduling and handling this, which is clearly JFS's obligation under the scope of work. And so at a minimum, it's issue finding as opposed to issue – No, well, finding – There should be issue of fact there for the minimum. You would have to show that there was abandonment and point to the facts that show abandonment. What do you do with the no waiver clause in the contract? I believe when a contract is abandoned that – let me say it this way as opposed to that way. A no waiver clause doesn't preclude a contract from being abandoned, and I've never seen a case that says that. If there's clear actions on both sides, but you've already not been – I think if Mr. McDonough is handling it, the phones are being answered in the county of Ulster, he's assigning Barbara Hyde, the client's coming into the county of Ulster, and that's the reason why Northacre and Barbara Hyde are together, and all of those obligations are assigned in the contract to JFS. That contract is abandoned, and that happened on the day of the accident. Do you have a citation to a case that would hold that that kind of partial abandonment is abandonment for these purposes? No, I would just simply – as we apply it in our briefs that EMF case, and specifically I believe it's – I'm going to say page seven of the reply brief, we go through four different factors in how we think they apply and how that's abandonment of that contract. And I don't want to bury the lead here because ultimately the liability here of the county was found to be 100 percent of the county and not as a volunteer, Barbara Hyde volunteering for JFS. I have time on rebuttal. Unless you have questions, I'll let my learned counsel speak. I do want to ask you one question about that, the burying the lead concept, because I read your brief as suggesting that this was your primary argument, and I think what I'm – the abandonment theory, and I think what I'm hearing now is that you think your strongest argument is actually that the arbitration resolved any derivative liability through JFS. It resolved the question of whether Barbara Hyde was a volunteer for JFS at the time of this accident. Am I right in at least understanding that that's what you're now offering is maybe you're – if you had to pick one, that would be the one you – I mean, you don't have to pick one. We're going to consider them all, just to be clear. But if you had to pick one, is that the one you – No, I would nuance it quite a little bit, Your Honor, by saying as I read the argument, I said that's an issue of fact, and I didn't want to have a trial on this case. I didn't want to send it back to the district court where I could easily win on the clear, unambiguous language of the policies and the fact of the arbitration award. So it's – I'm not abandoning the abandonment argument. I just see it as an issue of fact as I reviewed the briefs, and I said that's not how I want to lead. All right. Thank you. Thank you. Attorney Reagan. Good morning, Your Honors. My name is Michael Reagan, and I represent the county of Ulster, the New York State Local Government Services Foundation, Incorporated. Your Honor, I guess I'll start out first with this entire issue of abandonment. I think Your Honor got it correct. You know, this contract, this is a third renewal. It had been in effect for seven days. There is no evidence whatsoever of any – Well, can I ask you a question about that? Well, Your Honor, one of the things that was interesting is the contract was – the new contract was effective on January 1st. It was actually signed by the first party on January 8th, and by the second party in February. It was backdated. It was retroactively effective January 1st. And January 8th is the date of the accident. It makes me curious whether the parties went and re-executed this contract as a result of this accident. Your Honor, I'm sorry. That is beyond my scope of knowledge. I came in for the appeal. The attorney who handled the file and then along with proceedings is no longer with my firm. But I'll note that counsel hasn't raised that argument. No, no, I know. The fact of the matter is that there was a 20-year relationship between the parties, between JFS and the county, that this contract was originally put in place in 2017. It was renewed. It was renewed again. There's nothing to suggest that there was any type of nefarious conduct. No, I'm not. I'm not suggesting anything nefarious at all. What I'm thinking about is as we think about the abandonment question and this focus on, well, they just had renewed it eight days earlier, and that's a little bit of a legal fiction, and I was just trying to figure out how to think about it. And it may not be significant. No, no, but let me be clear. I'm not suggesting any kind of nefarious. And again, Your Honor, again, like you pointed out, there's a no-waiver clause. It's explicit. If the failure to demand adherence to certain provisions within the agreement doesn't constitute a waiver, unless there's been an express writing by my client's part acknowledging that something had been waived, you're not going to waive provisions. You're certainly not going to waive the entire contract. And more than that, counsel keeps arguing about abandonment. But my question would be, okay, say there was an abandonment. What was it abandoned in favor of? Was there no agreement? Were the services being performed for free? There would have to have been a superseding understanding, and counsel doesn't point to anything. The entire argument of abandonment, I think, is respect. I don't think it's particularly strong. Could you talk a little bit, and I don't want to jump away from abandonment, You know, this argument that, in fact, that Hyde's status as a volunteer for JFS was definitively resolved in the arbitration, which I confess, I didn't really come away from the briefing seeing that as a central argument. But I'm hearing it as a central argument now. Your Honor, respectfully, I'm about as surprised as you are. That wasn't a legal point that I saw in counsel's brief. It seemed to be nothing more than a throwaway couple of lines in his statement of facts, number one. Oh, yeah, I don't disagree with that. Number two. Tell me about the merits on that, though. Well, number two, I would say the merits are the fact is that, look, we all know the county wasn't in the car. There wasn't a finding that they were negligent. There was a finding that they were held liable pursuant to respondent superior. It's no different than what the theory on us, that we're saying for S.Y. Renishwood. So it wasn't like the county didn't take care of the vehicle and sent out, you know, hide in a car with no brakes and the court said, aha, you were negligent. That accident happened because you didn't maintain the car correctly. What I'm trying to figure out, though, is whether the question of whether JFS was also liable vicariously was litigated and decided in that arbitration. In the arbitration, again, Your Honor, I wish I could tell you. I just don't know. It wasn't really a focus for me on the appeal because it wasn't really presented as much of an issue. The fact of the matter is, nevertheless, and this was in the underlying, in the third department, North Acre, appellate division decision. Like the court said, you can certainly be an agent of more than two principles. So even if this, even if North Acre, excuse me, even if I was an agent of the county, she obviously could still be an agent of JFS. But if the arbitrator determined that she wasn't, in fact, an agent of both. But we don't know what facts were before the arbitration, Your Honor. I think you've answered my question. So we have to go with what we have. Now, with regard to this entire issue of whether or not Hyde was an agent, again, I don't see where counsel's going with it. No, when you look at the definition, when you look at the specifics of the policy, excuse me, the specifics of the contract, time and time again, section 1.3, section 2.1, section 2.2, talk about the explicitly state that JSS was the, it says, JSS agent. Proceeding, it says, providing that JSS volunteer, JSS volunteer. Now, counsel in his brief says, well, not all the clauses say it was JSS volunteer, JSS volunteer. So what? What does that matter? The fact of the matter is, repeatedly throughout the agreement, it says, JFS volunteers. There can't be any real question, there can't be any legitimate dispute. I don't see how you can say there, anybody can say that there is. Under the plain and express wording of this agreement, at the very least, they were the volunteers of JFS. Let's assume for a second they were with you on that question. I'd like to shift to the indemnification question for a second. Are they the, who's primary, who's excess, or is it co-excess? As I understand the theory on which the county prevailed here and the position the county is defending, the county is covered directly through the A&I policy as another party that is liable on account of the insured, the insured being proper high. Okay. That theory, as I understand it, is distinct from the, I think it was the third claim in the complaint here that isn't the complaint that carried the day, an indemnification theory. You're suing JFS for indemnification because you're liable for high. Am I right in understanding that those are different legal theories and that the one that you want on is the first one? Your Honor, my head's spinning a little bit because I'm not exactly sure. I will say that, again, this wasn't an issue that I thought was particularly It's an issue I'm asking about, though, and so I hope you're prepared to answer. It looks to me like in this case the complaint made a claim for indemnification, but it also made the claim that carried the day here. And I think those are two distinct claims. They were presented as two distinct claims. Okay. And so I'm asking you whether your argument to defend the district court judgments here depends on a theory that relies on the indemnification clause of the agreement between the county and JFS. Well, it doesn't necessarily have to, Your Honor, because when you look at the other insurance provisions in the two policies, the other insurance provision in the NICER policy explicitly states that it's access to other valid and collectible insurance, and the other insurance clause in the JFS policy states that it's primary. Well, as I read the JFS policy, it's primary if the coverage applies pursuant to an insured contract, and so that's what I'm trying to suss out. It's certainly an insured contract. Well, it is. Okay, Your Honor. The contract could be. If the liability that we're addressing here arose through that provision in the policy, then yes, that insured contract provision would definitely apply. What I'm trying to understand is whether you're saying even though the liability, as you just acknowledged here, arose from a direct coverage provision and didn't depend on the indemnification provision, because that contract has an indemnification provision, then even the liability on the theory that you've articulated and succeeded on should be treated as liability pursuant to an insured contract. I'm saying one or the other. We can certainly go to the indemnification provision. I believe it was certainly triggered. I believe that an insured contract is almost by definition, an indemnification provision is almost by definition an insured contract. I think we're not. I don't think we're understanding each other. I apologize. I'm sure it's me. No, no. So you don't need to rely on the indemnification provision here, and in fact the judgment of the district court that we're reviewing doesn't rely on the indemnification provision. Are you with me so far? Yes, Your Honor, I am. Okay. So when we're trying to decide who's primary and who's excess, as I read the ANI policy, it says it's excess over any other collectible insurance, but then it says it's primary for any liability assumed under an insured contract. Am I right that that's the provision you're relying on to say they're primary here? Correct.  But if you're not relying on the indemnification clause for the liability for which you're seeking coverage here, then even though there is an indemnification provision in an agreement between these two parties, is this a liability assumed under that indemnification clause? You said no. I don't necessarily see why it can't be both. Why does it have to be one or the other? You know, this is certainly a liability that we could say pursuant to the indemnification obligation that could trigger the additional insured coverage under the endorsement. I'm sorry, Your Honor. I must be obtuse because I'm not exactly understanding. Okay. Well, maybe it's me. No, I'm sure it's probably me. Actually, I'm sure it's me, and I apologize. Do either of my colleagues have any further questions? Could you just explain why the case is not moot in view of the other stipulation? Well, certainly, Your Honor, and I'll just refer to the judgment. And the judgment specifically says, give me one second. First of all, this entire argument of mootness, this is something out of left field. It wasn't raised in the proceedings below. It's beyond the scope of appellate review, which I would have pointed out in my brief had counsel made a legal argument in his brief before this Court that it was moot. But this was just a factual statement that was contained in the statement of facts and then relied on replaces. Oh, it's moot. I wasn't given a chance to address that argument in below-court proceedings, let alone upon appeal.  Nevertheless, more than that, Your Honor, if you'd just give me one second to find the judgment. Your colleagues seem to agree that it wasn't moot in his argument, which I thought. Well, what I'm saying is it's certainly not moot, especially when the judgment says the county of Ulster isn't insured under the antipolicy. So, you know, it's not just that Hyde is compelled to cover it, but that the... I thought that the mootness argument was slightly distinct from this argument about the arbitration award. I thought the mootness argument was because the parties stipulated that Hyde would have no more liability and because the liability that puts A&I on the hook here runs through Hyde, you can't do that because they've already let Hyde out of the case. I'm not saying it makes sense to me, but I thought that was the mootness argument that was specifically briefed with a heading in the brief. Is that ringing a bell? Yeah, my understanding that counsel was arguing, well, regardless, the fact of the matter is under the plain terms of the policy, liability section 2, liability coverage subsection A, who isn't insured includes who isn't insured. That was a separate argument from the mootness argument, which was that the settlement with Hyde eliminated this case because there was no more liability. And I thought that was what the court was discussing. I was simply saying that you can't say that this case is somehow moot because the county is entitled to coverage in and of itself under the plain terms of the policy, and in the judgment, the judgment in fact reflects that the county officer isn't insured under the anti-policy. So regardless of whether or not there was a stipulation of discontinuous or not, in the underlying proceedings, that's not really germane to the issue that brings us here today. All right. Thank you, counsel. We appreciate your arguments. Thank you. We'll hear again from Attorney Kaminska. Counsel inquired as to moot. Are you still arguing that the case is moot? It's moot as to Barbara Hyde. And that's the point that we made in the opening brief, page 37 of the opening brief. We said it's moot as to her because there is no amount of money to be paid in excess. Okay. I thought the argument was that the case is moot before us, not limited to Barbara Hyde. No. That we ought to dismiss the case for mootness. I didn't make that argument, no, no. To the extent I did and you liked it, then, yeah, let's go with that. Counsel asked if the contract wasn't abandoned, if it was abandoned, what did it turn into? And Murray Cohen tells you. It turned into them being a pass-through entity that just made payments. Then counsel asked about, well, the county was held as respondeat superior. You know who wasn't held as respondeat superior? JFS was not held because she wasn't held as a volunteer of us. So this is ‑‑ I appreciate you going there because since you last argued I've been noodling around on my computer because I was like, oh, my gosh, I missed a whole big argument in the brief. And I'm still not really finding it. I'm finding passing references and I'm definitely not finding the record to support it. What you've referred us to is a briefing in the summary general motion below. Can you point me to where in your brief you make that argument that Hyde's status as a volunteer was definitively adjudicated in the arbitration and, therefore, were precluded from revisiting that question? That's what I understand your argument to be now. Can you show me where to find that argument in your brief and where to find the record support for it? Yeah. I'm going to say that it is not clear, that I didn't make a headache to say it. Okay. Okay. We make the estoppel argument and we make it with regard to the employee status and we reference throughout the arbitration award. And so, in all honesty, it's only there implicitly. Okay. Okay. But it is there. And it is certainly an argument that doesn't require any other factual findings here. Everything is in the record. Judge Robinson, my question was where is it there? Well, where we make reference to the arbitration award, we do that throughout the briefs. We say numerous times that they were found 100% at fault. So that's where that argument comes from. But you did expressly make a judicial estoppel argument saying the county can't argue that she was a JFS volunteer having argued that she was a county volunteer for purposes of the workers' comp exclusivity issue. We do make that argument, Your Honors, because we incite to that Northacre opinion. And counsel ably responds to it, asserting that it wasn't raised below that Northacre argument. Now, clearly that whole Northacre case was before the district court. So we think it's proper for the court to do that. That's the argument of judicial estoppel. We do. We make reference to that. I know you do on appeal, but you didn't before the district court. Correct. Yes. The counsel below did not make it as forward as I made it in this appeal. Not only not forward, not made at all. So the question was why isn't the argument forfeited? Well, he makes the argument below it, again, starting at 1002 of the record, about the arbitration. He doesn't make it with regard to the third department decision in the Northacre where they find the employee status, where the county directly goes and says it. You make the argument on appeal of, quote, judicial estoppel. Yes. That argument was just not made in the district court, judicial estoppel. So that argument is forfeited, isn't it? No. No, it's not because, one, again, I refer to the judicial estoppel pertaining to the arbitration award, which starts at 1002 of the record. And I would say with regard to the Northacre third department decision, it is a situation where this court certainly has discretion. It is a pure issue of law that doesn't require any other findings of fact. But if you don't make the argument in the district court of judicial estoppel, of course we can read the third department decision. But in terms of the basis for the ruling here, if you didn't make it below, why wasn't it forfeited? I understand, and I can only just repeat my response, is that it is appropriately arranged here. And I think the court can take it on here at its discretion. Your Honor asked about the insured contract. Liability is not coming through an insured contract. So the best case scenario for the county is co-insurance, co-excess coverage here, because the insured contract provision is never raised, nor, I'm sorry, is not applicable because that's not how liability came through. But also, that indemnity agreement is not triggered. It's a negligence trigger, and again, the county has found 100% at fault. There's no liability for JFS. And so at best, if the county is insured, and I say that they're not, at best it's co-insurance. Lastly, I'll go to the Rule 54. I can say it in one sentence here, is that the complaint as pled is for coverage for Barbara Hyde and no one else. Thank you. Appreciate both your arguments. We will take this under advisement. And thank you.